Dozier *v.* Lewis et al.

WILLIAM B. DOZIER *v.* PIERSON LEWIS et al.

A surety paying the debt of his principal, is entitled to the benefit of all the security and the lien of the creditor; but he cannot extend the lien or security beyond their effect and operation in the hands of the creditor.

Conceding the lien of the judgment as it originally stood to be in full force when the bill was filed, and to have had precedence over the purchase of the slaves by L., it conferred only a mere right of satisfaction out of any property of the defendant then held or subsequently acquired, which, under our laws, operated as a charge upon the property from its date, and empowered the creditor to have the property taken in execution: — *Held*, that any one purchasing property in this condition, holds it subject to the right of the creditor to subject it to his judgment; but this right depends upon the fact that the property shall be actually taken in execution, and if that is never done, the creditor's claim is nothing more than a debt of record, and a purchaser for a valuable consideration would be entitled to hold property purchased from the defendant subsequent to the date of the judgment.

The property is not bound as trust property, nor has the judgment creditor any more claim upon it than has any other creditor whose claim is not in the form of a judgment.

In a certain sense, all the property of a debtor is regarded as subject as a trust fund to the payment of his debts; but this has reference to the obligation and duty of the debtor in good conscience, and not to the power of the creditor to set up a trust upon it, and thereby prevent its alienation.

Until the property becomes bound by legal process or conveyance, it is not subject to the trust so as to prevent the right of disposition.

If the purchaser paid a valuable consideration for the slaves, intending to remove them beyond the operation of the judgment lien, he will not be responsible to the judgment creditor for their value.

The purchase of the slaves by L. was made in the summer of 1839, and the lien of the judgment set up, though originally existing at that time, was destroyed

by the forfeiture of the forthcoming bond on it in 1840: — *Held,* that the lien of the judgment was postponed to the purchase of L.

ON appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

W. B. Dozier filed his bill against Lewis, Lane, and Collins, charging that on the 7th of May, 1839, the Mississippi and Alabama Railroad Company, use of Moffit, recovered a judgment in Jasper circuit court, against said Lewis as principal, and said Dozier and others as sureties, on a note for $1,000; that the defendants to the bill confederated together to defraud complainant, and compel him to pay said judgment, and to that end contrived that the slaves of Lewis should be run off from said county, when subject to the lien of said judgment, and sold, &c.; that, accordingly, defendants run off said slaves and placed them in the hands of Lane, who removed them from the State and sold them, &c.; that thereby Lewis had no property liable to said judgment; that the other sureties were insolvent, and complainant was compelled to pay said judgment. Prays that defendants be decreed to pay him the amount of said judgment so paid by him, &c., and for general relief.

Defendants answered, denying the fraud, but Lane admits that he purchased the slaves from Lewis; and the proof shows that the slaves belonged to Lewis and one Wyatt; that they were run off and arrested at Natchez; that defendants met at Paulding and made the arrangement by which Lane got them into his possession. The slaves were run off in 1839. The forthcoming bond on the judgment was forfeited in 1840. The admissions of Lane show that he purchased the slaves and removed them from the State. Lane was to sell the slaves and appropriate the proceeds to a note due to him from Lewis; and that Lane sold them in Tennessee.

The proof shows that the interest of Lewis in the slaves was worth some $1,200; that Lewis and the other sureties are insolvent, &c. The judgment record shows that complainant was a mere surety. The complainant afterward bonded and paid the judgment in 1840. The chancellor dismissed the bill, and complainant appealed to this court.

*Potter* for appellant.

Dozier, being surety, had in equity a right to insist on the lien to protect himself; he having paid the debt, may well call Lane to account for the proceeds of the slaves.

The right of Dozier to claim benefit of the judgment lien, is plain. *McNaing* v. *Eastland*, 10 Yerg. 310; *Neimcewig* v. *Gahn*, 3 Paige, 614; 17 Johns. 584.

Sureties who have paid government duties, are subrogated to the priority of the United States. *Ender* v. *Brune*, 4 Rand. 438; *Dias* v. *Bouchand*, 3 Edw. 485.

Surety is entitled to benefit of judgment lien on the property of his principal. *Nelson* v. *Williams*, 2 Dev. & Bat. Eq. 118.

Lane could not conscientiously retain the slaves against the claim of the judgment creditor, whose lien gave him a paramount right, and equity will hold the former as trustee of the latter, and also of the surety who, on payment of the debt, stands in place of the creditor. 2 Story's Eq. § 1255, et seq.; 1 Leading Cases, Eq. 110.

The proof shows that Dozier has paid the whole judgment, in point of fact. He gave a bond with surety, which satisfied the original judgment, and this also was a payment of it.

If Lane had retained the slaves in this State, Dozier could have subjected them to pay the judgment, and I think it a plain proposition that Lane cannot avoid liability by the mere removal and sale of the property. He took with notice of the lien, and by his act has deprived Dozier of his right to subject the property; and he cannot be permitted to withhold the proceeds. We are therefore entitled to a decree against Lane. Also, to a decree against Lewis for the debt we paid as his surety.

As to Collins, the proof implicates him with Lane. The whole matter was transacted in Paulding, where the judgment was rendered; and it seems clear that all the parties were cognizant of the judgment, and intended so to arrange as to prevent a levy.

*Geo. T. Swann* on the same side.

*D: Mayes* on the same side.

A surety has a right under the statutes of this State, to require the plaintiff in execution to make the money out of the principal. *Baine* v. *Williams*, 10 S. & M. 113.

This right of the complainant Dozier was defeated by the fraudulent trick of Lane, Collins aiding him. They converted to their own use the property of Lewis, on which the judgment creditor had a lien, and which Dozier had a right to have applied to the payment of his debt.

This case is the same in principle with the cases of *Gowing* v. *Bland*, 2 How. 813, and a case of *Vanwinkle & Potter* v. *Smith*, 26 Miss. R. 481, decided at the last term; though the facts are different, the reason is the same.

No counsel for appellees.

Mr. Justice HANDY delivered the opinion of the court.

The substance of the bill in this case is, that a judgment was rendered in the circuit court of Jasper county, at May term, 1839, against Pierson Lewis, principal, and Dozier, his surety, on which Dozier executed a forthcoming bond, which was forfeited on the 11th of May, 1840, and afterwards paid the judgment; that after the judgment, and in the summer of 1839, Lewis had certain slaves and other property in that county, but for some reason not known the sheriff refused to levy upon them at Dozier's request; that some time in the summer of 1839 Lewis fraudulently ran off the slaves and other property to Adams county, for the purpose of subjecting Dozier to the payment of this judgment; that Lane, being the holder of a debt then in suit against Lewis and one Wyatt, to whom the property belonged as partners, and being aware of Lewis's fraudulent intent, and intending to aid therein, purchased the slaves from Lewis in satisfaction of his debt to the amount of their value, and removed them from this State and sold them. Lewis having no other property or means to reimburse Dozier, he filed this bill, claiming to be subrogated to the rights and lien of the judgment which he paid, and for an account and decree against

Lane and one Collins, who is alleged to have participated in the alleged fraud, for the value of the slaves, &c. The answers deny all fraud and combination, and allege that the slaves were run off to Adams county by Wyatt, and arrested by Lewis and Collins, and afterwards sold to Lane in discharge of the debt he held against Lewis and Wyatt. The proof does not materially change the case as presented by the pleadings.

Upon the hearing, the chancellor dismissed the bill, and this appeal was thereupon taken.

There can be no question but that the surety paying the debt of his principal is entitled to the benefit of all the security and the lien of the creditor. But it is equally clear that he cannot extend the lien or security beyond their effect and operation in the hands of the creditor. He is subrogated to the rights of the creditor. What right, then, had the creditor in virtue of the judgment against Lewis and Dozier, so far as the property of Lewis was affected?

Conceding the lien of the judgment, as it originally stood, to be in full force when this bill was filed, and to have had precedence over the purchase of the slaves by Lane, what was the nature and extent of that lien? It was a general, not a specific lien. " It is not a property in the thing itself, nor does it constitute a right of action for the thing. It more properly constitutes a charge upon the thing." Story, Eq. § 1215. It is neither a *jus in re*, nor a *jus ad rem*. 4 Kent's Com. It confers a mere right of satisfaction out of any property of the defendant then held or subsequently acquired, which, under our laws, operated as a charge upon the property from its date, and empowered the creditor to have the property taken in execution. Any one purchasing property in this condition, of course holds it subject to the right of the creditor to subject it to his judgment. But this right depends upon the fact that the property shall be actually taken in execution ; and if that is never done, the creditor's claim is nothing more than a debt of record, and a purchaser for a valuable consideration would be entitled to hold property purchased from the defendant subsequent to the date of the judgment.

There is no soundness in the position, that such a purchaser

is to be held as a trustee, and accountable for the value of the property. The property is not bound as trust property, nor has the judgment creditor any claim whatever upon it in that point of view; nor is it even subject absolutely to the judgment, but only on condition that it is seized in execution, for the judgment may be otherwise discharged. It is no more subject as a trust fund to the payment of the judgment, than it is to the payment of any other just debt of the defendant not in the form of a judgment; and in a certain sense, all the property of a debtor is regarded as subject, as a trust fund, to the payment of his debts. But this has reference to the obligation and duty of the debtor in good conscience, and not to the power of the creditor to set up a trust upon it, and thereby prevent its alienation. Until it becomes bound by legal process or conveyance, it is not subject to the trust so as to prevent the right of disposition. The rule insisted upon in behalf of the appellant has no application to a case of this kind, but applies only to cases of direct, technical trust, and to parties who are special trustees, and hold property purely in trust. Story, Eq. § 1257. And we are not aware that it has ever been held that a party purchasing property for a valuable consideration from a defendant against whom there was a judgment operating as a general lien, is accountable to the judgment creditor for the value of the property. No authority has been brought to our notice sanctioning such a position, nor do we perceive upon what just principle it can be maintained.

Here, then, is no proof of fraud, but on the contrary it is shown that the purchaser gave a valuable consideration for the slaves. If he purchased them intending to remove them beyond the operation of the judgment lien, but yet paid a valuable consideration for them, he would not be responsible to the judgment creditor for their value.

But there is another ground upon which this bill could not be maintained. The purchase of Lane was made in the summer of 1839. The lien of the judgment set up by the appellant, though originally existing in May, 1839, was destroyed by the forfeiture of the forthcoming bond, which took place in May, 1840. The lien of the judgment was therefore postponed to

the purchase of Lane; and as the appellant can only claim the benefit of the lien of the judgment, it is manifest that he cannot set it up to defeat the purchase of Lane, which has precedence over it.

The decree of the chancellor is affirmed.