WILLIS HARDWARE CO. *v.* CLARK et al.

Dec. 15, 1952

No. 38560     12 Adv. S. 37     61 So. 2d 441

*Breed O. Mounger,* for appellant.

*Cohn, Hobbs & Hobbs,* for appellees.

HALL, J.

Appellant obtained a judgment for $2,227.01 in the circuit court against Johnnie Bracey on August 9, 1949, which was duly enrolled and entered upon the judgment roll of Walthall County on August 18, 1949. On January 2, 1950, it filed suit in the circuit court of said county against Johnnie Bracey and C. C. Clark and alleged in

its declaration the entry and enrollment of said judgment and further alleged that subsequent thereto and on various dates between August 24, 1949, and September 22, 1949, Bracey sold and delivered to Clark fifteen bales of lint cotton of the total value of $2,129.07 and that Clark took possession thereof and converted the same to his own use. The declaration further alleged that appellant had a lien on said cotton by virtue of said judgment and the enrollment thereof and that appellant was entitled to recover the value of said cotton from Clark and Bracey. It is not alleged or claimed that any execution or other process was ever issued or levied upon the cotton. Bracey demurred to the declaration and his demurrer was sustained. Clark filed a motion to change the venue of the suit to Lincoln County, the same being the county of his household and residence, and that motion was sustained. When the cause reached that county the court sustained a demurrer which Clark filed to the declaration, from which action this appeal is prosecuted.

The sole question presented is whether appellant had such a lien on the cotton as to entitle it to recover the value thereof from Clark.

Section 1554, Code of 1942, provides that the circuit clerk of each county shall procure and keep in his office a book to be styled "The Judgment Roll" and further provides that all judgments shall be enrolled therein within twenty days after the adjournment of each term of the court. Section 1555, Code of 1942, provides: "A judgment so enrolled shall be a lien upon and bind all the property of the defendant within the county where so enrolled, from the rendition thereof * * * ."

In the early case of Dozier v. Lewis, 27 Miss. 679, this Court said: "Conceding the lien of the judgment, as it originally stood, to be in full force when this bill was filed, and to have had precedence over the purchase of the slaves by Lane, what was the nature and extent of that lien? It was a general, not a specific lien. 'It is

not a property in the thing itself, nor does it constitute a right of action for the thing. It more properly constitutes a charge upon the thing.' Story, Eq. Sec. 1215. It is neither a *jus in re,* nor a *jus ad rem.* 4 Kent's Com. It confers a mere right of satisfaction out of any property of the defendant then held or subsequently acquired, which, under our laws, operated as a charge upon the property from its date, and empowered the creditor to have the property taken in execution. Any one purchasing property in this condition, of course holds it subject to the right of the creditor to subject it to his judgment. But this right depends upon the fact that the property shall be actually taken in execution; and if that is never done, the creditor's claim is nothing more than a debt of record, and a purchaser for a valuable consideration would be entitled to hold property purchased from the defendant subsequent to the date of the judgment.

''There is no soundness in the position, that such a purchaser is to be held as a trustee, and accountable for the value of the property. The property is not bound as trust property, nor has the judgment creditor any claim whatever upon it in that point of view; nor is it even subject absolutely to the judgment, but only on condition that it is seized in execution, for the judgment may be otherwise discharged. It is no more subject as a trust fund to the payment of the judgment, than it is to the payment of any other just debt of the defendant not in the form of a judgment; and in a certain sense, all the property of a debtor is regarded as subject, as a trust fund, to the payment of his debts. But this has reference to the obligation and duty of the debtor in good conscience, and not to the power of the creditor to set up a trust upon it, and thereby prevent its alienation. Until it becomes bound by legal process or conveyance, it is not subject to the trust so as to prevent the right of disposition. The rule insisted upon in behalf of the appellant has no application to a case of

this kind, but applies only to cases of direct, technical trust, and to parties who are special trustees, and hold property purely in trust. Story, Eq. Sec. 1257. And we are not aware that it has ever been held that a party purchasing property for a valuable consideration from a defendant against whom there was a judgment operating as a general lien, is accountable to the judgment creditor for the value of the property. No authority has been brought to our notice sanctioning such a position, nor do we perceive upon what just principle it can be maintained.''

That case was decided on a situation which arose in 1839. The statute above quoted, so far as we can find, was first enacted in similar terms on February 16, 1841, and appears in Hutchinson's Code of 1848, Ch. 61, Art. 14 (1). It has been repeatedly re-enacted down to the present date with some changes not material to here note. The decision in Dozier v. Lewis was therefore under the general law as to judgment liens and not under a statute.

In the case of Simpson v. Smith Sons' Gin & Machine Co., 75 Miss. 505, 22 So. 805, at a time when the statute was in full force, this Court said: ''Appellees had obtained judgment against Dewberry, which had been duly enrolled, and thereby acquired a general judgment lien upon certain personal property, and appellant had acquired this property and disposed of the same subsequently to the rendition and enrollment of said judgment. But the property was never taken in execution, and thereby subjected to the judgment lien, and the appellees have only a record debt against Dewberry. The lien is not a specific lien on certain property, but only a general lien on all property subject to levy and sale, and does not attach until the judgment creditor takes the property in execution.''

In First National Bank of Commerce v. Donald, 112 Miss. 681, 73 So. 723, this court quoted with approval from Dozier v. Lewis, supra, and said: ''The force of

a judgment lien must depend upon the statute which gives it. No execution and levy under the judgment lien having been had here, we do not hesitate to say that the lien is general, and not specific. * * * The lien, being a general lien, before levy of execution, is merely a charge upon the property; it is not a right in it nor to it; it is only a right of satisfaction to be had out of it.''

Appellant relies on the case of Gerlach-Barklow Co. v. Ellett, 145 Miss. 60, 111 So. 92, and contends that the same is in direct conflict with the decisions above cited. The factual situation in that case was wholly different from that existing in the case at bar. The facts would be the same if appellant had obtained execution on his judgment and had caused the same to be levied upon the Bracey cotton while it was still in the hands of appellee, but that was not here done. Appellant merely sued appellee for the value of the cotton which he purchased from Bracey. In Gerlach-Barklow Co. v. Ellett, the company had obtained a judgment against Ellett and had caused an execution to be levied on an automobile belonging to Ellett; the automobile was for some reason released from the execution and Ellett sold it to Standard Automobile Company; thereafter Gerlach-Barklow Co. obtained another execution against Ellett and caused it to be levied upon the same automobile then in the hands of Standard Automobile Company. The judgment creditor in that case seized the property of the judgment debtor in the hands of a third party and by such seizure under execution obtained a specific judgment lien thereon. Here the appellant did not seize the Bracey cotton in the hands of Clark so as to obtain a specific lien thereon but waited until after Clark had disposed of the property and merely sought a money judgment against Clark for conversion of the cotton against which no specific lien had ever been impressed. In order that confusion may be avoided in the future it should be noted that this case and all the cited cases deal only with personal property. We conclude that

appellant never obtained a specific lien on the cotton and that the action of the learned circuit judge in sustaining the demurrer to the declaration was correct and should be affirmed.

Affirmed.

*McGehee, C. J.,* and *Alexander, Kyle, Holmes, Arrington and Ethridge, JJ.,* concur.

ROBERDS, J., dissenting.

The controlling opinion largely nullifies the effect of the judgment enrollment statute upon the property of the judgment-debtor. It holds that one coming into possession of such property takes it free of such enrolled judgment unless the property has been seized under execution. If a transferee, or tranferees, regardless of number, of such property from the original owner, can maneuver to dispose of the property, or hide it out, so that levy thereon cannot be made under execution, then there is no liability whatever on such transferees. The entire right of the judgment creditor being dependent alone upon seizure under execution, enrollment of the judgment is useless, for execution can issue on an unenrolled judgment as effectually as upon one enrolled. As stated in the majority opinion, the Dozier case was decided before adoption of the statute, and, therefore, has no application thereto. The Simpson case is authority for the majority holding. However, in my view, that case is wrong. It makes the right of the creditor dependent upon a special lien. There is, as to effect, no difference between the two. Both simply entitle the creditor to proceed against the property to enforce his lien and subject the property to payment of the debt. A general judgment creditor can resort to execution or, in proper case, to chancery. A vendor, having a special lien for the purchase price, can resort to equity. A landlord, having a special lien, enforces it by the method set out in the statutes. In all cases of liens, whether general or special, the lienor can simply proceed to en-

force the lien and make his money out of the property. But in both cases the property is burdened with the lien. Section 1555, Code of 1942, imposing the general lien, provides, ''A judgment so enrolled shall be a lien upon and *bind all* the property of the defendant within the county where so enrolled, from the rendition thereof.'' Incidentally, no claim is made here that the transfer of the property did not take place in the county where the judgment was enrolled.

In my opinion this case is controlled by Gerlach-Barklow Co. v. Ellett, 145 Miss. 60, 111 So. 92. In that case Gerlach had an enrolled judgment against Ellett. Execution issued on that judgment and an automobile in the possession of Ellett was seized. However, the execution was released and withdrawn by written authority of the judgment-creditor. That left nothing against the automobile except the lien under the enrolled judgment. In that situation Ellett sold the automobile to Standard Automobile Company. Gerlach then had another execution issued and the car was seized in the possession of the Standard Automobile Company. The court held that the claim of Gerlach was superior to that of Standard. Of course, the rights of the parties were determined by the conditions existing at the time Standard got the car. At that time Gerlach had nothing whatever except its lien under the enrolled judgment. The first execution had been effectually withdrawn and the second had not been issued. The court stated the contention of Standard to be that Gerlach ''waived and surrendered its *judgment* lien against the car when it authorized the sheriff to release the car from the first execution issued by the judgment creditor and the lower court so held, seemingly upon the idea that no lien attached against personal property under an enrolled judgment, unless and until the property was seized under the writ of execution''. This Court then said ''This act of releasing the levy of the judgment creditor could in no way impair or defeat the judgment lien on the car

given under the statute.'' The Court further said the parties were ''bound to take notice of our statutory law on judgment liens, and he (the purchaser of the car) was charged with knowledge of the lien of the judgment creditor when he purchased the car from Ellett.'' Again, it is proper to emphasize that at the time of the purchase by Standard the only lien against the car was that of an enrolled judgment and the rights of Standard and of Gerlach, between whom the contest existed, were determined as of the time Standard purchased the car. The subsequent execution had no effect upon such rights; it was simply the means and occasion of bringing the issues to decision.