**H. L. MERIDETH, Jr., Plaintiff,**

v.

**UNITED STATES of America,
Defendants.**

**UNITED STATES of America,
Defendant and Third-Party
Plaintiff,**

v.

**GREENVILLE CONTRACTING COM-
PANY, Third-Party Defendant.**

**Civ. No. GC 703–S.**

United States District Court,
N. D. Mississippi,
Greenville Division.

Nov. 27, 1970.

H. L. Merideth, Jr., in pro. per.

J. A. Lake of Lake, Tindall & Hunger, Greenville, Miss., for England Motor Co.

Eugene J. Raphael, Greenville, Miss., for Boston Old Colony Ins. Co.

J. Wesley Watkins, III, Greenville, Miss., for Greenville Gravel Co.

James L. Robertson, Campbell, De-Long, Keady & Robertson, Greenville, Miss., for Meadors Chevrolet Co.

Philip B. Terney, Greenville, Miss., for Humble Oil & Refining Co.

William M. Dye, Jr., Asst. U. S. Atty., Oxford, Miss., for the United States.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

This interpleader action is before the court for final disposition on the record herein and Stipulation of Facts executed by the parties to the action.

Plaintiff filed this action pursuant to the provisions of 28 U.S.C.A. § 1335 alleging, in substance, that the amount in controversy exceeded the jurisdictional amount of $500.00, exclusive of interest and costs, i. e. the sum of $30,169.80, and at least two claimants, of diverse citizenship, claim or may claim to be entitled to the money or some part thereof. The United States (referred to herein as the "Internal Revenue Service" or the "Government") is a party defendant.

The facts are not controverted. The Greenville Contracting Co. (hereinafter referred to as the "debtor") borrowed from the Small Business Administration (SBA) on November 2, 1964, the sum of $100,000.00. As security for the loan the debtor executed a trust deed on all of its personal and real property. The trust deed was duly recorded on December 15, 1964 in the land records of Washington County, Mississippi, (Deed Book 993, pages 49 et seq.) the county in which the debtor was domiciled and operated its business, and wherein the property was situated.

The debtor was not successful in the operation of its business. The principal owner of debtor (a corporation) decided to liquidate debtor's property and apply the proceeds of the liquidation to the payment of debtor's debts. The debtor elected to liquidate its property through a sale at public auction conducted by a private auctioneer.

Subsequent to the execution of the trust deed five of the debtor's creditors obtained judgments in the County Court of Washington County, aggregating the sum of $14,924.77 and the debtor became liable for numerous federal taxes. In the appendix to this opinion there is contained a complete history of the judgment and tax liens, and the collection efforts made in regard thereto.

The auctioneer employed by debtor on September 12, 1969, sold the property of debtor at public auction. This sale was conducted with the sanction of SBA and the five judgment creditors. The net proceeds of the sale amounted to $30,-184.80. The auctioneer did not accept a bid of $5,300.00 for one Lorain Truck Crane, and it remained in the possession of debtor. The auctioneer accepted a bid for the debtor's real estate, but being unable to deliver a merchantable title thereto, the sale was cancelled. All other property was sold by the auctioneer.

Prior to the auction sale, on September 11, 1969 plaintiff, the debtor, A. F. Brownell, chief stockholder of debtor, and the five judgment creditors, entered into a written contract, denominated as a "composition agreement". The parties to the contract, realizing the insolvency of debtor and the desirability of liquidating the company, agreed that plaintiff should act as disbursing agent, to receive and disburse the proceeds of the auction to be held the next day. The order in which the funds were to be disbursed by plaintiff was set forth in the agreement as follows:

1) Payment of the balance due SBA on debtor's loan, for which SBA held the aforementioned deed of trust as security;

2) Payment in full of the judgment creditors and federal tax liens in order of their priority according to the laws of the State of Mississippi;

3) Payment in full to all secured creditors which were not known at the time; and

4) Payment to all unsecured creditors of their share of the remaining proceeds, to be ascertained from the books of the company.

Plaintiff was not to serve in the capacity of a fiduciary, and was to act only as disbursing agent. The agreement does not expressly provide for payment to plaintiff of any amount for services rendered in connection with his work.

After the sale, upon failure to carry through on the sale of the real property, SBA disposed of the property and applied the proceeds of sale to the debt, reducing the amount thereof to $18,972.89 (with interest at 4% per annum from March 17, 1970). The sale of the real property and the application of the proceeds are not issues in this action.

After the auction had been conducted, an execution was issued on two of the judgments aforesaid. The sheriff of the county executed the writ by levying on the crane aforesaid. The crane was sold for the sum of $3,500.00. This money remains in the hands of the sheriff, and has not been paid into the registry of this court. The court has no jurisdiction over the money in the hands of the sheriff, and can consider the fund only as it may affect the judgment to be entered in the action sub judice.

It is at once apparent from what the court has said that the funds turned over to plaintiff were not sufficient to carry out the program provided in the composition agreement. The amount paid to plaintiff in the sum of $30,184.80 ($30,-169.80 of which he has paid into court, deducting $15.00 for the filing fee herein) will not pay in full the balance due on the SBA loan, and the claims of the judgment creditors aggregating $14,924.-65, without interest, and the tax liens amounting to $13,458.47, exclusive of interest from the date upon which the tax lien notices were filed of record.

The parties were unable to agree as to the distribution of the money in plaintiff's hands and it became necessary for plaintiff to file the bill of interpleader in this action and summon the interested parties to appear before the court for an adjudication of their rights.

The foremost question with which the court is confronted in the case sub judice is whether the judgment liens hereinbefore mentioned have priority over the tax claims of the Internal Revenue Service. Counsel for the judgment-creditors vigorously assert that the claims of judgment-creditors, having become fixed before the assessment of the taxes by the Commissioner, and the filing of the Notices of Tax Liens with the Chancery Clerk of the County, have priority over the tax claims. The Internal Revenue Service just as vigorously asserts the contrary view.

All parties have submitted excellent briefs and these have been of much assistance to the court in considering the problems.

In determining the force, effect and extent of a judgment lien in Mississippi, the court must look to Mississippi law.

There are five Mississippi statutes dealing with the subject pertinent to the issue.[1] Section 1554, provides that the clerk of the Circuit Court of the County shall procure and keep in his office one or more books to be styled "The Judgment Roll". The clerk is required to record on the Judgment Roll, within twenty days after the adjournment of each term of court, all final judgments rendered at the term in the order in which the judgments were entered on the Minutes.

Section 1555 provides that "A judgment so enrolled shall be a lien upon and bind all the property of the defendant within the county where so enrolled, from the rendition thereof, and shall have priority according to the order of such enrollment, in favor of the judgment creditor, his representatives or assigns, against the judgment debtor, and all per-

1. Sections 1554, 1555, 1556, 1610 and 1934, Mississippi Code 1942, Ann.Rec.

sons claiming the property under him after the rendition of the judgment * * *."

A junior judgment creditor is given the right under Section 1556 to serve written notice on any senior judgment creditor requiring him to execute his judgment, in default of which the senior judgment creditor forfeits his priority.

■ The judgments involved in the case sub judice were rendered by the County Court and not the Circuit Court of the County. Section 1610 of the code, being one of the sections pertaining to County Courts, provides that the clerk of the Circuit Court shall be the clerk of the County Court and that the dockets, minutes and records of the County Court shall be kept, so far as is practicable, in the same manner as are those of the Circuit Court. By virtue of the provisions of the latter section the provisions of Section 1554, supra, apply to judgments rendered by the County Court.

After the sale under an execution the Sheriff or other officer of the county making the sale is required by Section 1934 of the Code to examine the County Judgment Roll, and, if any older judgment against defendant is found, having priority over the judgment under which the sale has been made, the Sheriff or other officer making the sale shall apply the proceeds thereof to the satisfaction of the older judgment, before making his return to the court on the execution.

A careful consideration of these statutes, without judicial interpretation, convinces the court that Mississippi statutory law has the effect of fixing a lien upon all property of a judgment debtor, from the date of the enrollment of a judgment on the Judgment Roll of the County.

This determination, without more, would result in a holding by the court that the claims of the judgment creditors in this case are entitled to priority of payment from the funds which have been interpleaded in this action, over the tax claims of the Internal Revenue Service, since all of the judgments were enrolled on the Judgment Roll prior to the assessment of the taxes, the recording of the Notices of Tax Liens, and the service of tax notices.

The two most pertinent cases of the Mississippi Supreme Court bearing upon the issue are Willis Hardware Company v. Clark, 1952, 216 Miss. 84, 61 So.2d 441, and Motors Securities Co. v. B. M. Stevens Co., 1955, 225 Miss. 361, 83 So. 2d 177.

In *Willis* the judgment creditor obtained a judgment against the judgment debtor in the Circuit Court of the County. After the judgment had been enrolled, the judgment debtor sold fifteen bales of lint cotton to one Clark, who took possession of the cotton and converted it to his own use. The judgment creditor sued Clark for the value of the cotton. It was not alleged or claimed that any execution or other process was ever issued or levied upon the cotton. As a basis for its suit against Clark, the judgment creditor claimed it had a lien on the cotton by virtue of the judgment and the enrollment thereof. The court stated "The sole question presented is whether appellant (Willis) had such a lien on the cotton as to entitle it to recover the value thereof." [2] The court reviewed the effect of the statute, in the light of several prior cases treating the force and effect of judgment liens in Mississippi. The *Willis* court held, in effect, that the statute creating a judgment lien on all property of the judgment debtor within the county where the judgment has been enrolled,[3] did not create such a lien on the property of the judgment debtor within the county as to entitle a judgment creditor to recover the value of the lien from a third party who had converted the property to his own use. The court recognized, however, that, even though Clark was a purchaser for value of the cotton, if the cotton had been seized under an execution while in Clark's possession and before its conversion by Clark, the rights of

2. 216 Miss. at 90, 61 So.2d at 441.

3. Section 1551, Miss.Code 1942, Ann.Rec.

the judgment creditor would have been superior to those of Clark.

The court concluded that the judgment lien statute provided a general and not a specific lien on the cotton and that the judgment creditor never obtained a specific lien on the cotton which would give rise to an action for conversion of the cotton.

Three years after the disposition of *Willis* the Mississippi Supreme Court decided the *B. M. Stevens Co.* case, supra. In the latter case the sole question for the court's consideration was whether the judgment lien in favor of the judgment creditor had priority over the lien of the chattel mortgage. The facts recited in the opinion reflect that the judgment creditor obtained a judgment against the judgment debtor on March 22, 1950, and the judgment was duly enrolled on the Judgment Roll of the county. On December 30, 1950, the judgment debtor became the owner of a truck which he continued to own until it was seized on January 18, 1954 under a writ of execution issued on the judgment. On October 6, 1953 the judgment debtor drove the truck to Monroe, Louisiana where he obtained a loan on the truck. The lender took a mortgage on the truck, and had it recorded in the county where the judgment debtor resided and in which the judgment was enrolled. The mortgage was recorded on October 13, 1953. As stated above, the question presented by the record was whether the judgment lien was entitled to priority over the recorded mortgage. It is noted that the judgment was enrolled prior to the acquisition of the truck by the judgment debtor and prior to recordation of the mortgage, but the execution was issued and levy made on the truck after recordation of the mortgage. The court held:

"Under our statute a judgment constitutes a lien upon and binds all the property of the defendant within the county where it is enrolled from the rendition thereof. The lien attaches to after-acquired property from the date of its acquisition. Jenkins v. Gowen, 37 Miss. 444; Cayce v. Stovall, 50 Miss. 396.

One who purchases property on which there is an enrolled judgment lien holds it subject to the right of the judgment creditor to have it seized under a writ of execution for the satisfaction of the judgment. Jenkins v. Gowen, supra; Minshew v. Davidson, 86 Miss. 354, 38 So. 315; Gerlach-Barklow Co. v. Ellett, 145 Miss. 60, 111 So. 92." [4]

The court distinguishes the *Willis* case with this observation.

"The appellant's attorneys cite in support of their contention the case of Willis Hardware Co. v. Clark, 216 Miss. 84, 61 So.2d 441. But the decision in that case is not controlling here. The cotton subject to the judgment lien in that case was never seized under a writ of execution. The appellant had caused no writ of execution to be levied upon the cotton while it was still in the hands of Clark so as to obtain a specific lien thereon, but had waited until after Clark had disposed of the cotton and had then sought to obtain a money judgment against Clark for the conversion of the cotton. In this case the judgment creditor proceeded against the property itself and caused the property to be seized under a writ of execution, as he had a right to do, thereby impressing a specific lien on the property; and under the decisions cited above the appellee's judgment lien had priority over the appellant's chattel mortgage lien." [5]

The United States Circuit Court of Appeals for the Fifth Circuit, had the occasion to discuss this Mississippi problem in Brookhaven Bank & Trust Co. v. Gwin, 5 Cir. 1958, 253 F.2d 17. This case involved the priority of liens on a fund in the hands of a trustee in bankruptcy. The bankrupt, R. P. Crenshaw, on July 1, 1953, executed to D. E. Gwin a chattel mortgage on a Ford Motor Truck and Float. This instrument was

4.  225 Miss. at 365, 83 So.2d at 179.

5.  Id. at 179.

filed for record in the Chancery Clerk's office of Lincoln County, Mississippi on June 1, 1954. Meanwhile, on September 8, 1953, Fordyce Truck & Equipment Co. had recovered a judgment against Crenshaw in the Circuit Court of Lincoln County which had been duly enrolled in the office of the Circuit Clerk on the same day. No execution was issued on the judgment and no levy was made against the truck and float. Such was the status when, on November 2, 1955, Crenshaw filed his petition and was adjudicated a bankrupt. On January 5, 1956 the Fordyce Truck & Equipment Co. assigned its judgment to the Brookhaven Bank & Trust Co. The referee ordered the property sold subject to the determination of the priority of liens against the proceeds of sale. The property brought $1,650.00, which was less than the amount of the lien of either claimant. The referee held that the lien of the mortgage was superior to that of the judgment. On petition for review the district court affirmed the referee's order. The Circuit Court of Appeals reversed, holding that the lien of the judgment was superior to that of the mortgage.

The Court of Appeals discussed *Willis* and the *B. M. Stevens Co.* case, and the effect of each upon the Mississippi judgment lien statute. In reference to *Willis* the court said:

"* * * Some of the language quoted in the Willis Hardware Company case from earlier Mississippi decisions is difficult, if not impossible, to explain consistently with the plain words of the statute that an enrolled judgment 'shall be a lien upon and bind all the property of the defendant within the county where so enrolled, from the rendition thereof * * *.' Title 10, § 1555, Mississippi Code, 1942. The actual holding of that case was, however, that Clark having disposed of the property was not liable to the judgment creditor for a money judgment. * * *[6]

In discussing the *B. M. Stevens Co.* case, the court said:

"There is no uncertainty or confusion about the clear and well-reasoned case of Motors Securities Co. v. B. M. Stevens Co., supra, and in any event, that being the later case, it is controlling upon the federal courts. * * *"[7]

In connection with Mississippi's judgment lien statute, the court said:

"The statute, Title 10, § 1555, Mississippi Code of 1952, provides that the enrolled judgment 'shall have priority according to the order of such enrollment * * * against the judgment debtor, and all persons claiming the property under him after the rendition of the judgment.' Literally, under that statute, the lien follows the property and does not authorize a money judgment against a person who has disposed of the property. As best we can discern, that construction seems to be the effect of the Willis Hardware Company case, supra."[8]

The Mississippi statutes, to which reference has been hereinbefore made, recognize the existence of judgment liens on all property of a judgment debtor situated within the county where the judgment is enrolled, and the priority of judgments, if there be more than one.

Section 1554 provides for the enrollment of judgments. Section 1555 declares an enrolled judgment to be a lien upon and bind all the property of a judgment debtor situated in the county. Sections 1556 and 1934 recognize the priority of senior over junior judgments.

■■ The *Willis, B. M. Stevens Co.* and *Brookhaven Bank & Trust Co.* cases establish the true rule to be that under the statute the lien follows the property and does not authorize a money judgment against a person who disposes of the property. In sum, once a judgment is obtained and duly enrolled, the judgment becomes a lien on all property of the judgment debtor situated within the

6. 253 F.2d at 21.

7. Id. at 22.

8. Id. at 22.

county. The lien follows the property and may be enforced against the property whenever it may be found within the county, without regard to intervening rights of any third parties.

■ After mature consideration of the problem, the court holds that the judgment creditors in the case sub judice acquired judgment liens on the property sold by the auctioneer as of the date of the entry and recordation of the judgments, and that such judgment liens existed on the property of debtor when it was sold by the auctioneer pursuant to the composition agreement of the parties.

Section 6321, Title 26, U.S.C.A. provides that when any person liable to pay any tax neglects or refuses to pay the same, after demand, the amount of the tax, with interest, penalties, etc. "shall be a lien in favor of the United States upon all property and rights of property, whether real or personal, belonging to such person." Section 6323(a), Title 26, U.S.C.A., provides "The lien imposed by Section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or *judgment lien creditor* until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate. (emphasis supplied)." Do the judgment creditors in the case sub judice come within the protection of Section 6322 as *judgment lien creditors?* The statutory history of the Mississippi judgment lien statutes, and the interpretation placed thereon by the Mississippi Supreme Court, convinces the court that they do and are entitled to priority over the tax claims of the Internal Revenue Service.

The court's holding is buttressed by the decisions of the United States Supreme Court in United States v. New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 and United States v. Vermont, 1964, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370. In *New Britain* the court considered conflicting municipal and federal statutory liens. Recognizing that a competing lien must be choate in order to take priority over a later federal tax lien, the court said:

"* * * The liens may also be perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established. The federal tax liens are general and, in the sense above indicated, perfected. * * *"[9]

■ The claims of the judgment creditors in the case sub judice meet the standard established in *New Britain* in order to create a choate lien. The identity of the lienors and the amount of the liens are established without doubt. The property subject to the lien is likewise definitely established as "all the property of the defendant within the county where so enrolled".[10]

The funds in the registry of the court are not sufficient to pay in full the SBA and the judgment liens. The indebtedness involved, including the tax claims, without taking into consideration interest on the debts, is computed as follows:

CLAIMS FILED

| | | |
|---|---|---|
| 1) Small Business Administration | $18,972.89 | |
| 2) Judgment Creditors | 14,924.65 | |
| 3) Tax claims | 13,458.47 | |
| Total | | $47,356.01 |

AVAILABLE FUNDS

| | | |
|---|---|---|
| 1) Funds in registry of court | $30,169.80 | |
| 2) Funds in hands of sheriff of Washington County | 3,500.00 | |
| Total | | $33,669.80 |
| Deficit | | $13,686.21 |

The record is not clear as to the manner in which the parties expect the court to deal with the $3500.00 in the hands of the sheriff of Washington County. The parties have stipulated that SBA is entitled to full payment of its claim from

9. 347 U.S. at 84, 74 S.Ct. at 369, 98 L. Ed. at 525.

10. Section 1555, Miss.Code, 1942, Ann. Rec.

the funds now in the registry of the court. When this is accomplished SBA's mortgage lien against the crane will have been satisfied and the property discharged from the lien. When this occurs, the title to the property in the hands of the purchaser will not be encumbered with the mortgage. The Mississippi statutory law is plain and unambiguous as to the application of the money now in the sheriff's hands. The money was realized under an execution issued on the judgment of England Motor Company. Boston Old Colony Insurance Company holds a judgment which is senior to the one held by England. Boston has not forfeited its priority under Section 1556 of the Code. The sheriff is commanded by Section 1934 of the Code, to pay the Boston judgment from the proceeds of the sale. Since such a disbursement of funds will not consume the money in his hands, the balance must be applied to the payment of either the England or the Humble Oil and Refining Company judgment, depending upon the order in which the judgments were entered on the minutes of the court, both being rendered and enrolled on the same day.

■ The court must infer from the stipulation and record herein that the money in the hands of the sheriff is to be handled according to the court's order rendered in the case sub judice. The court can marshal the assets of debtor or the securities of the lien holders in directing the distribution of the fund in the registry of the court and the money in the hands of the sheriff. Metropolitan Life Ins. Co. v. Jones, Miss. 1934, 152 So. 267; Dilworth v. Federal Reserve Bank, Miss.1934, 170 Miss. 373, 154 So. 535.

There is presented to the court the issue of the right of plaintiff to the allowance of expenses and compensation for his services in regard to the distribution of the funds entrusted to him and the institution of this action. Plaintiff came into possession of the funds which are the subject of this action by virtue of a composition agreement executed by the debtor and all judgment creditors.

It is apparent that, at the time, it was not anticipated that any difficulty would be encountered in making the distribution. However, differences of opinion as to priority of liens, compelled plaintiff to resort to an interpleader to make a proper distribution.

The Internal Revenue Service takes the position that an award for attorney's fees and costs in derogation of federal tax liens is not permissible under the prevailing rule of law, citing a number of decisions by federal courts, including the Supreme Court of the United States, to sustain its position. The court need not act upon this issue, since under the holding of the court, there is not sufficient money to pay in full the creditors who hold priority over the tax liens, without considering attorney's fees and costs.

■■ Plaintiff has rendered valuable service to the judgment creditors pursuant to the contract, and the court feels that he is entitled to his cost and a reasonable fee. The judgment creditors have agreed that SBA shall receive payment in full for its claim, and, as such is the case, the cost and attorney fee must be borne by them. The court feels that the circumstances of the case require that the court apportion the cost and attorney fee among the several judgment creditors according to the amount received by each of them from the funds available for distribution.

In sum, the court holds that the funds subject to distribution shall be made as follows:

From the sum of $30,169.40, in the registry of the court:

*First*: There should be paid to the SBA the sum of $18,972.89, plus interest at 4% from March 17, 1970;

*Second*: There should be paid to Boston Old Colony Insurance Co. the sum of $579.50, plus interest at 6% from February 14, 1969;

*Third*: There should be paid to Meadors Chevrolet Co. the sum of $656.12, plus interest at 6% from April 16, 1969;

*Fourth*: There should be paid to Humble Oil & Refining Co. the sum of $5,-

105.54, plus interest at 6% from April 16, 1969;

*Fifth*: The balance of said fund shall be paid to England Motor Co., as a credit on its claim of $5,359.68, plus interest at 6% from April 17, 1969.

Provided, however, that there is taxed as a cost item herein the sum of $750.00, being a reasonable attorney fee for plaintiff, and the sum of $85.97 for expenses incurred by plaintiff, or a total of $835.-97. The said attorney fee and costs shall be deducted on a pro rata basis from the amounts to be paid to the judgment lien creditors, as aforesaid.

The England Motor Company is entitled to receive from the $3,500.00 held by the sheriff, an amount sufficient to pay the balance due on its claim with interest (excluding England's portion of the attorney fee and costs aforesaid); and Greenville Gravel Company shall be entitled to the balance in the hands of the sheriff.

The parties will confer and furnish the court with an appropriate order for entry within ten days.

APPENDIX

SCHEDULE

I   JUDGMENT CREDITORS

| CREDITORS | AMOUNT [1] | DATE OF ENTRY | DATE ENROLLED |
|---|---|---|---|
| 1) Boston Old Colony Ins. Co. (Boston) | $ 570.50 ($9.00 costs) | 2/14/69 | 2/14/69 [4] |
| 2) Meadors Chev. Co. (Meadors) | $ 644.12 ($12.00 costs) | 4/16/69 | 4/16/69 [3] |
| 3) Humble Oil & Ref. Co. (Humble) | $5,105.42 (costs not shown) | 4/17/69 | 4/17/69 [5] |
| 4) England Motor Co. (England) | $5,359.68 (costs not shown) | 4/17/69 | 4/17/69 [2] |
| 5) Greenville Gravel Co. (Greenville) | $3,244.93 (costs not shown) | 5/26/69 | 5/26/69 [5] |

1. Each judgment bears interest at six percent per annum from date of rendition until paid. Section 39, Miss.Code 1942, Ann.Recompiled.

2. Execution was issued on England's judgment on June 9, 1970, and the Sheriff of Washington County levied on and sold under the execution one Lorain Truck Crane found in the possession of debtor, Greenville Contracting Co. The sale at public auction was held July 24, 1970. The successful bidder was Allied Equipment Inc., Jackson, Miss., at the sum of $3,500.00. This amount remains in the hands of the Sheriff.

3. Execution was issued on Meador's judgment on May 30, 1969, and was returned by the Sheriff without levy as nulla bona on September 30, 1969.

4. Boston filed a suggestion of garnishment on its judgment on September 9, 1969, and a writ of garnishment was served on that date on the auctioneer who cried the private auction of the property involved. Execution was issued on Boston's judgment on July 23, 1970, and the Sheriff made a levy thereunder on the aforementioned crane on July 24, 1970. On August 18, 1970 Boston moved the county court in which its judgment and that of England were obtained to require the Sheriff of the county, who has the $3,500.00 derived from the execution sale of the crane in his hands, to pay over to Boston as an elder judgment-creditor an amount sufficient to pay Boston's judgment with interest and costs, pursuant to the provisions of Section 1934, Miss.Code 1942, Ann.Recompiled. This motion is still pending and has not been acted upon by the court.

5. Humble and Greenville have not secured issuance of any process from the county seeking to collect or enforce their judgments.

## II  TAX LIENS OF UNITED STATES

The tax claim of the Internal Revenue Service of the United States is reflected in the stipulation submitted by the parties to this court, and is as follows:

| Kind of Tax | Taxable Period | Date of Assessment & Notice of & Demand For Payment | Assessment | Amount Out-standing | Date Notice of Tax Lien Filed [2] |
|---|---|---|---|---|---|
| WH & FICA | 2d Qtr 68 | 6/6/69 | $3,996.40(T) 147.55(I) | $3,041.39 | 7/9/69 |
| WH & FICA | 3d Qtr 68 | 6/6/69 | 4,026.10(T) 144.88(I) | 4,170.98 | 7/9/69 |
| WH & FICA | 4th Qtr 68 | 6/6/69 | 3,677.73(T) 245.20(P) 79.77(I) | 3,938.80 | 7/9/69 |
| Excise | 3d Qtr 68 | 6/20/68 | 96.00(T) 3.68(I) | 99.68 | 8/14/69 |
| | | | TOTAL | $11,250.85 [1] | |

T — Tax

P — Penalty, pursuant to the provisions of Sections 6651 and 6656, 1954 Internal Revenue Code

I — Interest

| Kind of Tax | Taxable Period | Date of Assessment and Notice of and Demand For Payment | Amount Out-standing | Date Notice of Tax Lien Filed |
|---|---|---|---|---|
| WH & FICA | 4th Qtr 68 | 10/10/69 | $ 141.08 [1] | 11/25/69 |
| WH & FICA | 2nd Qtr 69 | 3/20/70 | 2,066.54 [2] | 4/13/70 |

In addition to recording the Notice of Tax Lien in the Chancery Clerk's office of Washington County, as shown by the foregoing statement of the tax claim, the Internal Revenue Service made other efforts to collect the taxes due the government as follows:

1) A notice of levy was served on the auctioneer, Gordon Dement, for $11,-444.34, including interest to September 12, 1969.  The notice was served September 12, 1969.

2) On or about November 17, 1969, a notice of levy was served on plaintiff, H. L. Merideth, Jr. for $11,542.36.

3) On or about January 7, 1970 a final demand was served upon H. L. Merideth, Jr., which was not accepted, for $11,-542.36.

1.  Plus interest as provided by law.

2.  Notice of tax liens were filed in the Office of Chancery Court, Washington County, Mississippi.