BROOKHAVEN BANK & TRUST COM-
PANY, Appellant,

v.

D. E. GWIN, Appellee.

No. 16695.

United States Court of Appeals
Fifth Circuit.

March 4, 1958.

Richard E. Stratton, III, Brookhaven, Miss., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

This case concerns the priority of liens on a fund in the hands of a trustee in bankruptcy.

On July 1, 1953, R. P. Crenshaw executed to D. E. Gwin a chattel mortgage on a Ford motor truck and float. Eleven months later, on June 1, 1954, this instrument was filed for record in the office of the Chancery Clerk of Lincoln County, Mississippi. Meanwhile, on September 8, 1953, Fordyce Truck and Equipment Company had obtained a judgment against Crenshaw in the Circuit Court of Lincoln County which had been duly enrolled in the office of the Circuit Clerk on the same day. No execution was issued on said judgment and no levy was made against the truck and float. Such was the status when, on November 2, 1955, Crenshaw filed his petition and was adjudicated a bankrupt. On January 5, 1956, Fordyce Truck and Equipment Company assigned its judgment to the Brookhaven Bank & Trust Company.

The referee ordered the property sold by the trustee subject to a determination of the priority of liens against the proceeds of sale. The property brought $1,-650.00, which was less than the amount of the lien of either claimant. After a hearing, the referee held that the lien of Gwin's chattel mortgage was superior to the lien of the judgment held by the Brookhaven Bank & Trust Company. On petition for review, the district court affirmed the referee's order.[1] From that

---

Owen Roberts, Brookhaven, Miss., Colbert Dudley, Jackson, Miss., for appellant.

1. The district judge set forth his reasoning in a well-written letter opinion:

"* * * The priority of the liens in this case must be determined by the law of Mississippi, and the Supreme Court of Mississippi in the case of Willis Hardware Company v. Clark [216 Miss. 84], 61 So.2d 441, held definitely that the lien of a judgment creditor was general and entitled him to a specific lien only when he had execution levied and personal property seized. The entry of a judgment does not give the judgment creditor a lien on the debtor's personal property until an execution is levied and the property seized. The court quotes from the First National Bank v. Donald, [112 Miss. 681], 73 So. 723, to the effect that the force of a judgment lien must depend upon the statute which gives it; that where no execution and levy under the judgment is had, the lien is general and not specific and is merely a charge upon the property, not a right to it nor

judgment the Brookhaven Bank & Trust Company appeals.

■ We start with the general rule that " * * * all obligations of a legal and equitable nature, except those expressly affected by the terms of the act, remain undisturbed by bankruptcy." Wilson v. Duncan, 5 Cir., 1932, 61 F.2d 515, 516. Each party first seeks to strengthen his position by reference to the terms of the Bankruptcy Act itself.

■ The appellee insists that Section 67(c) of the Bankruptcy Act, 11 U.S. C.A. § 107(c), renders invalid the judgment lien of the appellant when it inveighs against "statutory liens" "on personal property not accompanied by possession of, or by levy upon or by sequestration or distraint of, such property." A judgment lien, it is true, does not exist at common law but is a creature of statute. Von Segerlund v. Dysart, 9 Cir., 1943, 137 F.2d 755, 757; 49 C.J.S. Judgments § 454. Is it, however, one of the "statutory liens" referred to in Section 67(c)? Subsection (c) refers back twice to the preceding subsection (b), which in turn shows that the "statutory liens" intended are " * * * statutory liens in favor of employees, contractors, mechanics, landlords, or other classes of persons, and

statutory liens for taxes and debts owing to the United States or to any State or any subdivision thereof, created or recognized by the laws of the United States or of any State, * * *." 11 U.S.C.A. § 107(b). Judgment liens are covered by the still further preceding subsection (a), reading in part:

"(a) (1) Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this title by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) if such lien was sought and permitted in fraud of the provisions of this title * * *." 11 U.S.C.A. § 107(a) (1).

■ The judgment now held by the Bank was not a lien ex proprio vigore. If a lien, it became such when enrolled in the office of the Circuit Clerk. That was more than four months before the filing of the petition in bankruptcy. There is no contention that Crenshaw was then insolvent or that the obtaining and enrolling of the judgment involved any fraud. Judicial and statutory liens are contrasted in 4 Collier on Bank-

in it, but only a right of satisfaction to be had out of it by levy and execution. In the Clark case Judge Roberds' dissenting opinion demonstrates clearly what he thinks the Supreme Court of Mississippi held in the majority opinion; that is to say, until the judgment creditor has execution issued and levied he has no lien that can claim priority over different types of liens.

"It is well settled in bankruptcy matters that when a party becomes a bankrupt and files his petition and is adjudicated a bankrupt, then the rights of all parties are fixed as of that time. No one can do an act after that that will enlarge his rights. The date of the filing of the petition in bankruptcy controls. Therefore, when Crenshaw filed his petition in bankruptcy the rights of all parties were fixed, whatever they might be. The judgment creditor in the present case had not issued an execution and levied upon the property in question.

Therefore, he had no specific lien. The claim of D. E. Gwin arises out of an instrument executed by the bankrupt which I held to be a mortgage and this was recorded on the 1st day of June, 1954, and thereupon a specific lien on the date of the recording in favor of D. E. Gwin arose, but it was subject to have been defeated had the judgment creditor procured an execution and levied upon the property while in the hands of Gwin; but this he did not do, and I am of the opinion, therefore, that the mortgagee has priority and am in accord with the Referee and his judgment and order should be affirmed.

"In the case of Motors Securities Co. v. B. M. Stevens [Miss.], 83 So.2d 177, execution had issued and it is not in conflict with my holding, because in that case the execution did issue and the personal property was seized under it, which brought into effect the priority of the judgment creditors lien."

ruptcy, 14th ed., Paragraph 67.17[2], p. 122. If the Bank has a lien, we think that it is one "obtained by * * * judgment * * * or other legal * * * process or proceedings" treated in subsection (a) and not a "statutory lien" treated in subsections (b) and (c) of Section 67, 11 U.S.C.A. § 107(a), (b), (c).

The appellee insists that, under Section 60 (a) and (b) of the Bankruptcy Act, the trustee's rights were to be measured by those of a good faith purchaser, and for that position relies upon Corn Exchange National Bank & Trust Co. v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, and In re Quaker City Sheet Metal Co., 3 Cir., 1942, 129 F.2d 894. Chief Judge Phillips of the Tenth Circuit pointed out, however, in Porter v. Searle, 1955, 228 F.2d 748, 752, 755, that following the decisions relied on by appellee, Congress amended § 60 of the Bankruptcy Act by the Act of March 18, 1950, 64 Stat. 24; and that the report of the House Committee on the Judiciary made plain that one of the objectives of the amendment was:

> " '(B) To eliminate the evil of allowing a trustee in bankruptcy to take the position of a potential and artificial bona fide purchaser, and to restore him to the position of a lien creditor, in harmony with his functions under the Bankruptcy Act * * *.' "[2]

Under the present Act, it is clear that the bona fide purchaser test is no longer applicable to the perfection of transfers either of real or of personal property. 3 Collier on Bankruptcy, 14th ed., Paragraph 60.40, p. 924, Paragraph 60.42, p. 929.

The appellant, on its part, claims that the lien of the chattel mortgage was not good as against the trustee under the so-called "strong-arm clause" of Section 70(c) of the Bankruptcy Act, 11 U.S. C.A. § 110(c), providing in pertinent part that:

> "* * * The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

See McKay v. Trusco Finance Co., 5 Cir., 1952, 198 F.2d 431, 433; Sampsell v. Straub, 9 Cir., 1952, 194 F.2d 228, 231; compare Myers v. Matley, 318 U.S. 622, 627, 63 S.Ct. 780, 87 L.Ed. 1043.

The effect of that clause upon the present controversy will be apparent after we have examined the legal rights of the two parties under the law of the State of Mississippi.

The pertinent Mississippi statutes are as follows:

> "§ 869. *Priority of all instruments, and notice thereof controlled by date of filing for record—take effect, when.*
>
> "Every conveyance, covenant, agreement, bond, mortgage, and deed of trust shall take effect, as to all subsequent purchasers for a valuable consideration without notice, and as to all creditors, only from the time when delivered to the clerk to be recorded; and no conveyance, covenant, agreement, bond, mortgage, or deed of trust which is unrecorded or has not been filed for record, shall take precedence over any similar instrument affecting the same property which may be of record, to the end that with reference to all instruments which may be filed for record under this section, the priority thereof shall be governed by the priority in time of the filing of the several instruments, in the absence of actual notice." Title 7, § 869, Mississippi Code 1942.

---

2. Quoted from United States Code Congressional Service 1950, Vol. 2, 81st Congress, 2nd Session, p. 1988.

"§ 1555. *Judgment—lien of enrolled.*

"A judgment so enrolled shall be a lien upon and bind all the property of the defendant within the county where so enrolled, from the rendition thereof, and shall have priority according to the order of such enrollment, in favor of the judgment creditor, his representatives or assigns, against the judgment debtor, and all persons claiming the property under him after the rendition of the judgment; and a judgment shall not be a lien on any property of the defendant thereto unless the same be enrolled; but in counties having two judicial districts a judgment shall operate as a lien only in the district or districts in which it is enrolled." Title 10, § 1555, Mississippi Code 1942.

The two most pertinent cases on the meaning and effect of those statutes are the ones discussed by the district court,[3] viz.: Willis Hardware Co. v. Clark, 1952, 216 Miss. 84, 61 So.2d 441, and Motors Securities Co. v. B. M. Stevens Co., Miss. 1955, 83 So.2d 177. Some of the language quoted in the Willis Hardware Company case from earlier Mississippi decisions is difficult, if not impossible, to explain consistently with the plain words of the statute that an enrolled judgment "shall be a lien upon and bind all the property of the defendant within the county where so enrolled, from the rendition thereof * * *." Title 10, § 1555, Mississippi Code, 1942. The actual holding of that case was, however, that Clark having disposed of the property was not liable to the judgment creditor for a money judgment. It was upon that ground that the Mississippi Supreme Court distinguished the earlier case of Gerlach-Barklow Co. v. Ellett, 145 Miss. 60, 111 So. 92:

"Appellant relies on the case of Gerlach-Barklow Co. v. Ellett, 145 Miss. 60, 111 So. 92, and contends that the same is in direct conflict with the decisions above cited. The factual situation in that case was wholly different from that existing in the case at bar. The facts would be the same if appellant had obtained execution on his judgment and had caused the same to be levied upon the Bracey cotton while it was still in the hands of appellee, but that was not here done. Appellant merely sued appellee for the value of the cotton which he purchased from Bracey. In Gerlach-Barklow Co. v. Ellett, the company had obtained a judgment against Ellett and had caused an execution to be levied on an automobile belonging to Ellett; the automobile was for some reason released from the execution and Ellett sold it to Standard Automobile Company; thereafter Gerlach-Barklow Co. obtained another execution against Ellett and caused it to be levied upon the same automobile then in the hands of Standard Automobile Company. The judgment creditor in that case seized the property of the judgment debtor in the hands of a third party and by such seizure under execution obtained a specific judgment lien thereon. Here the appellant did not seize the Bracey cotton in the hands of Clark so as to obtain a specific lien thereon but waited until after Clark had disposed of the property and merely sought a money judgment against Clark for conversion of the cotton against which no specific lien had ever been impressed." Willis Hardware Co. v. Clark, supra, 61 So.2d at pages 442–443.

In the later case of Motors Securities Co. v. B. M. Stevens Co., supra, 83 So.2d at page 179, the Mississippi Supreme Court in turn distinguished the Willis Hardware Company case upon the same ground:

"The appellant's attorneys cite in support of their contention the case of Willis Hardware Co. v. Clark, 216

3. See Footnote 1, supra.

**22**

Miss. 84, 61 So.2d 441. But the decision in that case is not controlling here. The cotton subject to the judgment lien in that case was never seized under a writ of execution. The appellant had caused no writ of execution to be levied upon the cotton while it was still in the hands of Clark so as to obtain a specific lien thereon, but had waited until after Clark had disposed of the cotton and had then sought to obtain a money judgment against Clark for the conversion of the cotton. In this case the judgment creditor proceeded against the property itself and caused the property to be seized under a writ of execution, as he had a right to do, thereby impressing a specific lien on the property; and under the decisions cited above the appellee's judgment lien had priority over the appellant's chattel mortgage lien."

█ The statute, Title 10, § 1555, Mississippi Code of 1952, provides that the enrolled judgment "shall have priority according to the order of such enrollment * * * against the judgment debtor, and all persons claiming the property under him after the rendition of the judgment." Literally, under that statute, the lien follows the property and does not authorize a money judgment against a person who has disposed of the property. As best we can discern, that construction seems to be the effect of the Willis Hardware Company case, supra.

There is no uncertainty or confusion about the clear and well-reasoned case of Motors Securities Co. v. B. M. Stevens Co., supra, and in any event, that being the later case, it is controlling upon the federal courts. In that case, Stevens Company obtained a judgment on March 22, 1950 against Breland and it was duly enrolled. In December 1950, Breland acquired a Chevrolet truck. On October 6, 1953, he executed a chattel mortgage on the truck to Motors Securities Company,

which was duly recorded. On December 7, 1953, Stevens Company had an execution issued on its judgment. The truck was seized under the writ of execution while it was still in Breland's possession, but, of course, after the chattel mortgage on it had been executed and recorded. The court held that the lien of the judgment was superior to that of the chattel mortgage, saying:

" * * * The appellee's judgment had been duly enrolled in the county where the judgment debtor resided, and the judgment had not been satisfied at the time the chattel mortgage was filed for record.

* * * * * *

"Under our statute a judgment constitutes a lien upon and binds all the property of the defendant within the county where it is enrolled from the rendition thereof. The lien attaches to after-acquired property from the date of its acquisition. Jenkins v. Gowen, 37 Miss. 444; Cayce v. Stovall, 50 Miss. 396.

"One who purchases property on which there is an enrolled judgment lien holds it subject to the right of the judgment creditor to have it seized under a writ of execution for the satisfaction of the judgment. Jenkins v. Gowen, supra; Minshew v. Davidson, 86 Miss. 354, 38 So. 315; Gerlach-Barklow Co. v. Ellett, 145 Miss. 60, 111 So. 92." Motors Securities Co. v. B. M. Stevens, supra, 83 So.2d at page 179.

In that case, as in this, the chattel mortgage was recorded after the judgment was enrolled. Appellee contends that the Motors Securities Company case does not apply here, because in this case there had been no execution and levy on the property prior to bankruptcy. Admittedly, at the date of bankruptcy and just prior thereto, the Bank had a remedy by the exercise of which its rights would have been superior to those of Gwin. The district judge said [4] that Gwin's chattel morgage "was subject to

4. See Footnote 1, supra.

have been defeated had the judgment creditor procured an execution and levied upon the property while in the hands of Gwin" (or, we may add, while in the hands of Crenshaw).

After the sale of the property brought less than the amount secured by either lien, the trustee in bankruptcy has asserted no rights against the property. Why, then, should the bankruptcy affect the lienholders, or reverse the order of priority otherwise existing between them?

█ If it does affect the priorities of the two liens, the Bankruptcy Act works against the lien of the chattel mortgage. We have seen that Section 67(a) of the Act did not operate to nullify the judgment lien held by the Bank. On the other hand, the "strong-arm clause" of Section 70(c), quoted earlier in this opinion, vested in the trustee all of the rights, remedies and powers of a creditor, whether existing or not, who held or who could have obtained a lien by legal or equitable proceedings. Gwin's chattel mortgage, not filed for record until eleven months after its execution, was probably invalid as against the trustee under Section 70(c). Constance v. Harvey, 2 Cir., 1954, 215 F.2d 571; Conti v. Volper, 2 Cir., 1956, 229 F.2d 317.[5] If, therefore, bankruptcy has any effect as between the rival lienholders, it leaves the theretofore prior judgment lien held by the Bank still standing, while it invalidates the lien of Gwin's belatedly filed chattel mortgage.

As has just been indicated, however, subdivisions (c) and (e) of Section 70 operate in favor of the trustee. We have been cited to no case, nor have we found any, holding that either of those subdivisions can be used as a basis for determining relative priorities between two lien holders as against whom the trustee claims no right.

Apparently, the trustee abandoned the property as soon as he learned that its sale brought less than the amount secured by either lien. By affirming the order of the referee, the district court impliedly approved the trustee's abandonment of the property.[6] The trustee is not a party to this appeal.

█ The effect of the abandonment "relates back to the commencement of the proceedings in bankruptcy, and the title stands as if no assignment had been made." Sessions v. Romadka, 145 U.S. 29, 51, 52, 12 S.Ct. 799, 805, 36 L.Ed. 609.[7] "Whatever title or inchoate interest may have passed to the trustee was extinguished by relation as of the filing of the petition when the trustee informed the court that the shares were burdensome assets, and was directed by the court to abandon and disclaim them." Brown v. O'Keefe, 300 U.S. 598, 602, 57 S.Ct. 543, 546, 81 L.Ed. 827. Collier says that " * * * where the issue has been squarely raised it has been held that the bankrupt after abandonment holds the title in the same manner as if it had never been in the trustee." Collier on Bankruptcy, 14th ed., Paragraph 70.42, p. 1224. The relative rights and priorities of the lien holders in this case are, then, the same as if bankruptcy had not intervened.

The judgment is, therefore, reversed and the cause remanded with directions to enter judgment in favor of the appellant.

Reversed and remanded with directions.

---

5. If Professor Marsh's criticism of Constance v. Harvey, as quoted in the Supplement to 4 Moore's Collier on Bankruptcy, 14th ed., § 70.48, is sound, the result is the same under § 70 (e) for the Bank supplied the requirement of an actual creditor with a provable claim.

6. See Collier on Bankruptcy, 14th ed., Paragraph 70.42, p. 1219.

7. The "assignment" referred to was to what was then called the "assignee in bankruptcy."