DAN E. MASON AND BEVERLY R. MASON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3174–73. Filed May 10, 1977.

*Frank H. Lang, Jr.,* for the petitioners.
*Edward B. Simpson,* for the respondent.

WILBUR, *Judge:* Respondent has determined the following deficiencies in petitioners' Federal income tax:

| Taxable years | Deficiencies | Additions to tax under sec. 6651(a) |
|---|---|---|
| 1967 | $19,087 | $4,772 |
| 1968 | 2,190 | 278 |
| 1969 | 92 | 625 |
| 1970 | 430 | 0 |

Certain issues having been conceded, the sole issue for decision is whether a voluntary petition filed by petitioner Dan E. Mason, under chapters I–VII of the Bankruptcy Act, terminated the subchapter S status of his wholly owned corporation.

### FINDINGS OF FACT

All of the facts have been stipulated and are found accordingly.

Petitioners Dan E. and Beverly R. Mason, husband and wife, resided in Danville, Calif., at the time their petition was filed herein. Dan E. Mason will be referred to as petitioner.

Prior to and during the years 1963 through 1966 petitioner was engaged in the business of highway paving and construction and the rental of construction equipment. The business was conducted as a sole proprietorship under the name of Dan Mason Equipment Rental. In July 1966 petitioner formed a new corporation, Arrow Equipment Sales (Arrow), and transferred certain construction equipment used in the sole proprietorship to Arrow in exchange for 100 percent of Arrow's stock.

For Federal tax purposes, Arrow maintained its books and records and reported its income on a calendar year basis. Some time in 1966, Arrow made a valid election to be treated as a corporation under subchapter S for its taxable year commencing January 1, 1967. Arrow filed a United States Small Business Corporation Federal Income Tax Return, Form 1120S, for the taxable year 1967 and reported a $47,580 net operating loss thereon. This loss was claimed by petitioner on his personal return for the 1967 tax year.

On January 17, 1967, Arrow filed a voluntary petition in bankruptcy in the United States District Court for the Eastern District of California at Fresno, Calif., and was

thereby adjudicated a bankrupt. Shortly thereafter, Max M. Hayden (Hayden) was appointed and qualified as a receiver of the property of Arrow pursuant to an order of the bankruptcy referee. On February 13, 1967, Hayden was appointed trustee in the Arrow bankruptcy.

As trustee, Hayden sold some of Arrow's equipment and relinquished the rest to secured lienholders. On August 17, 1967, the bankruptcy referee issued an order of discharge, and on August 1, 1969, the Arrow bankruptcy was closed by order of the bankruptcy court.

On November 30, 1967, petitioner, individually, filed a voluntary petition in bankruptcy in the United States District Court for the Eastern District of California at Fresno, Calif., and was thus adjudicated a bankrupt. Petitioner owned 100 percent of the Arrow stock on the date the petition was filed and the Arrow stock was listed as property of the bankrupt estate in schedules attached to the bankruptcy petition. Hayden was also appointed and qualified as trustee in petitioner's individual bankruptcy. On November 3, 1969, Hayden, acting as trustee in the Dan Mason bankruptcy, filed a petition with the bankruptcy court for authorization to "abandon" all of the Arrow stock. On the same day the court entered an order authorizing the trustee to abandon the stock. Finally, on February 18, 1970, petitioner's bankruptcy was closed by order of the bankruptcy court.

The only consent filed by petitioner with respect to the Arrow subchapter S election was the one filed initially in 1966. Hayden, as trustee, never filed any consent with respect to a subchapter S election for Arrow.

OPINION

Section 1371(a)[1] states that a corporation, in order to retain "small business corporation" status, must have only individual shareholders except that an estate may also be a shareholder. An election under subchapter S terminates when the corporation ceases to be a small business corporation.[2]

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2] As applicable to the year in issue, the Code provides:
SEC. 1371. DEFINITIONS.
(a) SMALL BUSINESS CORPORATION.—For purposes of this subchapter, the term

Respondent contends that the filing of a petition under chapters I–VII of the Bankruptcy Act vested title to the Arrow stock in an entity separate and apart from the debtor, i.e., the estate in bankruptcy. Respondent further argues that the estate in bankruptcy is not an individual or estate within the meaning of section 1371(a), and that the existence of a nonqualified shareholder resulted in the termination of Arrow's subchapter S status.

Petitioner, however, contends that although an estate in bankruptcy was created, title to Arrow's stock never passed to the trustee in bankruptcy since the stock of Arrow held by petitioner was abandoned by the trustee as a worthless asset. Petitioner states that abandonment under the bankruptcy law relates back to the petition date, in effect leaving petitioner with continuous title to the stock. We agree with petitioner.

In ordinary bankruptcy (a straight or liquidating bankruptcy), a separate estate is created. *Mueller v. Commissioner*, 60 T.C. 36 (1973), affd. in part and revd. in part 496 F.2d 899 (5th Cir. 1974); *Bloomfield v. Commissioner*, 52 T.C. 745, 750 (1969). See secs. 47, 55(c), and 57, Bankruptcy Act, 11 U.S.C. secs. 75, 91(c), and 93; Plumb, "The Tax Recommendations of the Commission on the Bankruptcy Laws—Income Tax Liabilities of the Estate and the Debtor," 72 Mich. L. Rev. 935 (1974). Additionally, section 70(a) of the Bankruptcy Act, 11 U.S.C. sec. 110(a), provides:

The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested

---

"small business corporation" means a domestic corporation which is not a member of an affiliated group (as defined in section 1504) and which does not—
 (1) have more than 10 shareholders;
 (2) have as a shareholder a person (other than an estate) who is not an individual;
 (3) have a nonresident alien as a shareholder; and
 (4) have more than one class of stock.
SEC. 1372(e).TERMINATION.—
    * * *
 (3) CEASES TO BE SMALL BUSINESS CORPORATION.—An election under subsection (a) made by a small business corporation shall terminate if at any time—
    (A) after the first day of the first taxable year of the corporation for which the election is effective, if such election is made on or before such first day, or
    (B) after the day on which the election is made, if such election is made after such first day,
the corporation ceases to be a small business corporation (as defined in section 1371(a)). Such termination shall be effective for the taxable year of the corporation in which the corporation ceases to be a small business corporation and for all succeeding taxable years of the corporation.

by operation of law with the title of the bankrupt *as of the date of the filing of the petition* initiating a proceeding under this Act * * * [Emphasis added.]

Respondent relies squarely on this language of the act in arguing on brief that "The estate became a nonqualifying shareholder, *as of the petition date,* thereby terminating the Arrow subchapter S election." (Emphasis added.) This is consistent with the respondent's position that when property passes to the trustee, the estate is taxable on income from that property.[3]

Thus it is clear (and respondent's position assumes) that even though considerable time elapses between the filing of a petition and the appointment of a trustee—

the critical time as of which the trustee's rights and powers are to be determined, and the rights of others connected with the proceeding adjusted (unless the Act expressly provides otherwise), is the date upon which the petition is filed. [4A Collier, Bankruptcy, par. 70.05, p. 67 (14th ed. 1976).]

Prior to 1938, the bankruptcy law was ambiguous on this point and the same result was reached "by means of a legal fiction," whereby title "vested in the trustee, upon his qualification, as of the date of adjudication, but upon so vesting related back to the time of filing the petition." 4A Collier, Bankruptcy, par. 70.05, p. 64 (14th ed. 1976). Section 70(a), as amended in 1938, "retains this fictional device of relating back." Id. at p. 68.

The doctrine of "relating back" the trustee's title is reviewed here because of its close affinity to another concept of bankruptcy law, that of abandonment, which concerns us here. While the trustee acquires title as of the date the petition is filed, it has long been recognized that the trustee has the power to disclaim or "abandon" certain of the bankrupt's worthless or burdensome assets. See Bankruptcy Rule 608; 4A Collier, Bankruptcy, par. 70.42 (14th ed. 1976).

The effect of abandonment on the title to the bankrupt's assets was made very clear by the Supreme Court in *Brown v. O'Keefe,* 300 U.S. 598, 602 (1937):

Whatever title or inchoate interest may have passed to the trustee was extinguished by relation as of the filing of the petition when the trustee informed the court that the shares were burdensome assets, and was

---

[3] See Rev. Rul. 64–48, 1968–1 C.B. 301.

directed by the court to abandon and disclaim them. * * * In such case "the title stands as if no assignment had been made." [Citations omitted.]

This doctrine, also "relating back" to the petition date, is, if not a twin sister, at least a blood relative of the provisions giving the trustee title as of the petition date. It is also a fundamental tenet of the bankruptcy law. See *Brookhaven Bank & Trust Co. v. Gwin,* 253 F.2d 17 (5th Cir. 1958); *In re Gravure Paper & Board Corp.,* 234 F.2d 928 (3d Cir. 1956); *Rosenblum v. Dingfelder,* 111 F.2d 406 (2d Cir. 1940); *In re Malcolm,* 48 F.Supp. 675 (E.D. Ill. 1943); *Schram v. Tobias,* 40 F.Supp. 470 (E.D. Mich. 1941); 4A Collier, Bankruptcy, par. 70.42 [4] (14th ed. 1976).

In the instant case, the trustee abandoned the Arrow stock in petitioner's bankrupt estate, because Arrow had previously been adjudicated a bankrupt and its stock was worthless. As a result of the abandonment, title to the Arrow stock revested in petitioner as though the trustee had never owned it. Since the stock was deemed to have been owned continuously by petitioner, the subchapter S election remained in effect during the 1967 taxable year.

Respondent objects that "the rule [of abandonment] is a legal fiction" and is "in the nature of a technical matter of title." But the issue here is who had title. Respondent would embrace the "relating back" fiction to give the trustee in bankruptcy title to the bankrupt stock, but reject the "relating back" concept when abandonment strips the trustee of title ab initio.

We do not believe the facts of the present case justify respondent's ambivalent attitude toward kindred features of bankruptcy law relating title back to the petition date. On the facts before us, the concept of abandonment advances the policy underlying both subchapter S and the bankruptcy law.

Congress has consistently expressed its displeasure with overly technical interpretations of subchapter S that transform provisions intended to simplify the tax law for small businesses into artificially sophisticated traps for the unwary.[4] The provisions limiting the number and type of

---

[4] See S. Rept. No. 91–1535, to accompany H.R. 19627 (Pub. L. 91–683), 2 (1970); H. Rept. No. 91–1735, to accompany H.R. 19627 (Pub. L. 91–683), 3 (1970); 116 Cong. Rec. 43361 (1970) (Remarks of Representative Byrnes); 112 Cong. Rec. 2382–2383 (1966) (Remarks of Representatives Byrnes and Thompson); 105 Cong. Rec. 19699–19700

shareholders were intended to keep the new provision simple and avoid accounting complexities on the passthrough of income. S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part 2) 505. See also *A & N Furniture & Appliance Co. v. United States*, 271 F.Supp. 40 (S.D. Ohio 1967); *Parker Oil Co. v. Commissioner*, 58 T.C. 985 (1972). The present case involves no additional complexity, since the losses of the defunct corporation were simply passed through to the shareholders without regard to the transitory lodging of title to the worthless stock in the trustee in bankruptcy. There is no reason why the unexpected financial misfortunes of one shareholder should fortuitously deprive other shareholders of the benefits of subchapter S, disseminating financial distress in a manner calculated to make the financial affliction contagious.[5] In the case of a viable corporation, it may leave the trustee of a shareholder in bankruptcy with stock that is less marketable, defeating both the purposes of subchapter S and the bankruptcy law. In the case of an insolvent corporation, it may deprive the trustee of a loss carryback that might otherwise be an available asset under *Segal v. Rochelle*, 382 U.S. 375 (1966).

Congress has consistently expressed its displeasure concerning the severe hardships resulting from inadvertent and capricious terminations,[6] and acted on several occasions to

---

(1959) (Remarks of Representative Patman). This phenomena has spawned an endless series of articles on the subject. See, e.g., Braverman, "Special Subchapter S Situations—Regulations Run Rampant," 114 U. Pa. L. Rev. 680 (1966); Daly "Operation of Subchapter S Corporations," 53 Taxes 495 (1975); Malloy "Rules for Electing a Valid Subchapter S Election Are Precise and Leave No Margin for Error," 3 Taxation for Lawyers 40 (1974); O'Neill, "Literal Compliance: The I.R.S. Weapon That Blunts Subchapter S Benefits," 30 J. Tax. 90 (1969); Rosenkranz, "Subchapter S—An Illusory Promise?" 16 Tax Coun. Q. 267 (1972); Ury, "Subchapter S: A Trap for the Unwary," 44 Taxes 473 (1966); Woodbury, "The Tax Option Corporation After More Than a Decade of Increasing Complexity," 44 N.Y.S.B. Jour. 319 (1972).

[5] The problem inheres in respondent's theory that an estate in bankruptcy is taxed as a separate entity, analogous to and pursuant to the provisions taxing decedent's estate, but, unlike a decedent's estate, is not an estate for purposes of sec. 1371. See Plumb, "The Tax Recommendations of the Commission on the Bankruptcy Laws—Income Tax Liability of the Estate and the Debtor," 72 Mich. L. Rev. 935, 956 n. 112 (1974). Since the trustee in any event did not make an election in the present case, we need not decide whether respondent's position on this question has any merit.

[6] S. Rept. No. 94–938, to accompany H.R. 10612 (Pub. L. 94–455), 420–422 (1976); S. Rept. No. 91–1535, *supra* at 2; H. Rept. No. 91–1735, *supra* at 2–3; 116 Cong. Rec. 43360 (1970) (Remarks of Representatives Boggs and Byrnes); S. Rept. No. 1007, 89th Cong., 2d Sess. (1966), 1966–1 C.B. 527, 528, 532–533; H. Rept. No. 1238, to accompany H.R. 9883 (Pub. L. 89–389), 89th Cong., 2d Sess. 2, 8 (1966); 112 Cong. Rec. 2382–2383

eliminate them, most recently in extensive amendments included in the Tax Reform Act of 1976.[7] And of course, under respondent's view, the trustee is without any power to do a thing about a capricious termination, even though it significantly impairs the position of both the creditors and the bankrupt for whom he acts, since he is considered to be a nonqualifying shareholder by respondent.

We concede that the doctrine of relating abandonment back over a period of years may require the courts to establish limits to its applicability in the area of Federal taxation to accommodate the need for an annual accounting of income. The narrow facts of the instant case do not present the occasion to speculate about those parameters. Here the subchapter S corporation had filed for and been discharged in bankruptcy when the individual shareholder himself filed for bankruptcy. The trustee for the individual shareholder acquired worthless stock in a bankrupt corporation. After filing for bankruptcy in early 1967, the corporation never again engaged in business. We are thus here concerned with only the last year of business, and uncertainty over how earnings of the corporation would be handled in future years is not present. On the limited facts before us we hold that the doctrine of abandonment is applicable.

*Decision will be entered under Rule 155.*

---

(1966) (Remarks of Representatives Byrnes, Mills, and Thompson). Cf. Staff of the Joint Comm. on Internal Revenue Taxation, General Explanation of the Tax Reform Act of 1976, 207-208, 211 (1976).

[7] Sec. 902, Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1608.

