T.C. Summary Opinion 2004-122

UNITED STATES TAX COURT

RONALD L. DEVAULT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3946-03S.                    Filed September 7, 2004.

Ronald L. DeVault, pro se.

<u>Robert V. Boeshaar</u>, for respondent.


    ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in

effect at the time the petition was filed.[1]  The decision to be

entered is not reviewable by any other court, and this opinion

should not be cited as authority.

_____

    [1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2000,
the taxable year in issue.  All Rule references are to the Tax
Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax of $7,981 for the taxable year 2000, as well as an accuracy-related penalty under section 6662(a) in the amount of $1,596.

The issues for decision are:

(1) Whether petitioner was a shareholder in an S corporation during 2000 such that petitioner is required to report his pro rata share of the corporation's income. We hold that he was.

(2) Whether petitioner is liable for the accuracy-related penalty under section 6662(a). We hold that he is not.

Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time that the petition was filed, petitioner resided in Auburn, Washington.

Petitioner first met Philip Turner (Mr. Turner) in 1993 when they both worked at Modern Manufacturing, Inc. (Modern).[2]  In June 1995, petitioner and Mr. Turner formed Union Machine, which they later incorporated in the State of Washington on December 21, 1995. Union Machine's principal business was manufacturing

_____

[2] Around that time, petitioner worked as a first quality inspector and quality control officer. By trade, petitioner and Mr. Turner are machinists.

aircraft parts.  Petitioner and Mr. Turner each made initial capital contributions to Union Machine.  Petitioner contributed $12,000 of inspection equipment and granite,[3] and Mr. Turner transferred his personally owned equipment.  Mr. Turner became president of Union Machine, and petitioner became vice president.[4]

On January 10, 1996, Union Machine filed with the Internal Revenue Service (IRS) a Form 2553, Election by a Small Business Corporation, to be treated as an S corporation, which the IRS accepted effective January 2, 1996.[5]  Since then, Union Machine has operated as an S corporation on a calendar year basis.  The Form 2553 listed the shareholders as follows:

| Name | Date of Shareholder Consent | | No. shares[1] | Date Acquired |
| --- | --- | --- | --- | --- |
| Philip L. Turner | 6/28/95 | 51 | | 1/2/96 |
| Ronald L. DeVault | 6/28/95 | 49 | | 1/2/96 |
| Gigi DeVault[2] | 9/29/95 | -- | | 1/2/96 |

[1]At all relevant times, the number of shares owned by each shareholder has remained the same.

[2] At the time of the S corporation election, Gigi DeVault (Mrs. DeVault) was petitioner's spouse.

After the formation of Union Machine, Mr. Turner resigned from Modern to manage Union Machine's day-to-day operations. Petitioner, on the other hand, continued to work full time at

---

[3]  Petitioner obtained a personal loan from Household Finance to purchase these items.

[4]  At all relevant times, Mr. Turner has remained president of Union Machine.

[5]  We note that Form 2553, Election by a Small Business Corporation, incorrectly listed Union Machine's date of incorporation as Jan. 2, 1996.

Modern,[6] but worked at the end of the day at Union Machine to help Mr. Turner with certain jobs.  In mid-1997, petitioner began working full time at Union Machine because of its increased workload.  Petitioner received an annual salary of $90,000 plus yearend bonuses.  In addition to petitioner and Mr. Turner, Union Machine employed one full-time employee and some part-time programmers.

Around 1998, petitioner began experiencing personal hardships.  On one occasion, Union Machine loaned petitioner $6,000 to pay his tax liability to the IRS.  In addition, Mrs. DeVault filed for divorce after 30 years of marriage to petitioner.  Petitioner needed money to repair his house to sell in the divorce.  Union Machine lent him $16,000 for the repairs.

Petitioner's personal hardships also began to negatively affect his work performance at Union Machine, as well as his business relationship with Mr. Turner.  By late 1998, petitioner left the employment of Union Machine.[7]  Petitioner stopped receiving any form of compensation from Union Machine and was no longer involved with its business-related matters.  Around this

---

[6]  Petitioner continued to work at Modern because Union Machine received most of its business from Modern.

[7]  Petitioner believed that Mr. Turner asked him to leave because Mr. Turner was concerned that Mrs. DeVault would pursue an interest in Union Machine.  On the other hand, Mr. Turner believed that petitioner was only taking a temporary leave of absence.  Nevertheless, they agree that petitioner left the employment of Union Machine in late 1998.

time, Mr. Turner offered to forgive petitioner's $22,000 debt to Union Machine and to pay petitioner an additional $10,000 for his ownership interest. Petitioner did not accept the offer.

Since leaving Union Machine, and through the year in issue, petitioner did not sign any document purporting to relinquish his interest as a shareholder in Union Machine, nor did he take any legal action to terminate such interest in Union Machine. In addition, Union Machine has not provided petitioner with any consideration in exchange for redemption of his shares, and Mr. Turner has not commenced a declaratory judgment action to become the sole shareholder.[8]

In July 1999, petitioner filed for bankruptcy protection under chapter 7 of the Bankruptcy Code. In his bankruptcy filing, petitioner disclosed his shareholder interest in Union Machine but did not assign a value to it. The bankruptcy court, however, did not administer petitioner's shareholder interest as part of the bankruptcy estate. In November 1999, the bankruptcy court discharged, inter alia, petitioner's Household Finance loan and his debt to Union Machine of $22,000.[9]

On December 7, 1999, Union Machine held its annual meeting

---

[8] Since late 1998, Union Machine has not had an occasion requiring action by a two-thirds vote of the stockholders.

[9] Around this time, Mr. Turner again offered to buy petitioner's ownership interest. Petitioner did not accept this offer.

of stockholders and directors. Petitioner was not present at this meeting.[10] The minutes signed by Mr. Turner indicated that petitioner was elected to serve as vice president and as a member of the board of directors until the next annual meeting.

For the taxable year 1999, Union Machine filed a Form 1120S, U.S. Income Tax Return for an S Corporation. The Form 1120S reported that petitioner and Mr. Turner were its only shareholders at the end of the taxable year 1999. Attached to the Form 1120S, inter alia, was a Schedule K-1, Shareholder's Share of Income, Credits, Deductions, etc., for each shareholder. Petitioner's Schedule K-1 reported his pro rata share as follows: Ordinary income of $8,375; investment interest income of $72; depreciation of $1,343; and nondeductible expenses of $81.

On December 5, 2000, Union Machine held its annual meeting of stockholders and directors. The minutes of this meeting signed by Mr. Turner indicated that petitioner was not present at the meeting, but that he was reelected to serve on the board of directors until the next annual meeting.

For the taxable year 2000, Union Machine filed Form 1120S. The Form 1120S reported that petitioner and Mr. Turner were its only shareholders at the end of the taxable year 2000. Attached

---

[10] Since leaving Union Machine in 1998, petitioner has not received any written notice of the annual meetings. We note that the 1999 minutes incorrectly stated that petitioner was present at the meeting.

to the Form 1120S, inter alia, was a Schedule K-1 for each shareholder. Petitioner's Schedule K-1 reported his pro rata share as follows: Ordinary income of $27,489; charitable contributions of $2,499; investment interest income of $20; and depreciation of $1,690 (petitioner's 2000 Schedule K-1).

Petitioner timely filed a Form 1040EZ, Income Tax Return for Single and Joint Filers With No Dependents, for 2000. Petitioner did not report any of the items reported on petitioner's 2000 Schedule K-1.

In the notice of deficiency, respondent determined that petitioner failed to report shareholder interest income of $20 and shareholder ordinary income of $27,489. Respondent further determined that petitioner is liable for the accuracy-related penalty under section 6662(a) for a substantial understatement of tax.

Petitioner timely filed a petition with the Court disputing the determined deficiency as well as the accuracy-related penalty. Paragraph 4 of the petition states as follows:

> The Notice of Deficiency was calculated based upon information reported on IRS Form 1120S filed on behalf of Union Machine, Inc., EIN 91-1688285, for the year ending 2000. The Form 1120S erroneously reported that I was a shareholder of Union Machine, Inc. I do not believe that I was a shareholder of Union Machine for the year ending 2000 (or for any part of the year ending 2000). The Schedule K-1, which the IRS has relied upon to determine the Notice of Deficiency, should not have been issued in my name. Accordingly, there is no basis for the Notice of Deficiency.

After filing the petition, petitioner signed a declaration on May 14, 2003, which states:

> I, Ronald Leon DeVault, left Union Machine in September of 1999. From September, 1999 until the present, I have not had any transaction, communication, business, or monetary action with Union Machine, Inc. or with Phillip Turner, president and owner of Union Machine, Inc.
>
> As of September, 1999, I did forfeit all rights, privileges, and my 49% share in Union Machine, Inc. to Phillip Turner.

Petitioner provided this declaration to respondent's agent as well as to Union Machine's accountants. Before doing so, however, petitioner invited Mr. Turner to also sign the declaration, but Mr. Turner declined to do so on the ground that it was not truthful because petitioner never signed a release of his interest in Union Machine.

Discussion

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[11]

---

[11] Sec. 7491(a) does not apply in this case to shift the burden of proof to respondent because petitioner neither alleged that sec. 7491(a) is applicable nor introduced credible evidence with respect to any factual issue relevant to ascertaining his income tax liability. See Higbee v. Commissioner, 116 T.C. 438, 442 (2001).

A.  S Corporation Pro Rata Distributive Share

Generally, a shareholder of an S corporation must include in gross income his or her pro rata share of the corporation's income, loss, deduction, or credit.  Sec. 1366(a), (c); see also sec. 61(a).  Consequently, we must decide whether petitioner was a shareholder of Union Machine during 2000 such that he is required to report his pro rata share of Union Machine's interest and ordinary income.

Generally, a shareholder of a corporation remains a shareholder until he or she is validly divested of his or her shares despite any announcement of resignation or abandonment of that status.  18A Am. Jur. 2d, Corporations, secs. 772, 778 (2004); see Owyhee Grazing Association, Inc. v. Field, 637 F.2d 694 (9th Cir. 1981).  Under the Washington Business Corporation Act, Wash. Rev. Code Ann. tit. 23B (West 2001), a shareholder may be validly divested of his or her shares by transferring his or her shares in accordance with the articles of incorporation, the bylaws, or a restriction agreement,[12] Wash. Rev. Code Ann. sec. 23B.06.270 (West 2001), or, if the shareholder dissents from a corporate action, the dissenting shareholder may obtain payment of the fair value of his or her shares, Wash. Rev. Code Ann. sec. 23B.13.020 (West 2001).  Furthermore, the corporation may divest

---

[12]  We note that no such corporate documents were introduced into evidence.

a shareholder of his or her shares by redeeming a shareholder's shares subject to certain limitations, Wash. Rev. Code Ann. sec. 23B.06.400(1), (4)(b)(i) (West 2001), or by seeking judicial dissolution of the corporation, Wash. Rev. Code Ann. sec. 23B.14.300 (West 2001).

Petitioner contends that he was not a shareholder of Union Machine in 2000 because he forfeited his ownership interest in Union Machine in September 1999. In support of his contention, petitioner relies on his declaration stating that he forfeited to Mr. Turner his 49-percent share in Union Machine in September 1999. However, the May 14, 2003, declaration signed by petitioner after the filing of the petition, which declaration Mr. Turner refused to sign, is nothing more than a self-serving statement. We are not compelled to accept petitioner's unsubstantiated, conclusory, and self-serving statement without additional evidence. See Johnson v. Commissioner, T.C. Memo. 1999-127, affd. 246 F.3d 674 (9th Cir. 2000).

In addition, the evidence in the record contradicts petitioner's declaration. Petitioner testified at trial that he actually left Union Machine in 1998, but that he wrote down September 1999 only because he was instructed by an IRS agent during an audit to list a date for the time period at issue. Therefore, we do not regard petitioner's declaration to be determinative that petitioner was not a shareholder in 2000.

Petitioner's assertion that he abandoned his interest also is not supported by the evidence. There is no dispute that petitioner left the employment of Union Machine in 1998. Nonetheless, petitioner was aware that he still had an ownership interest in Union Machine. Indeed, petitioner listed in his bankruptcy filing in July 1999 that he owned an interest in Union Machine. The bankruptcy estate, however, abandoned petitioner's shareholder interest in Union Machine, and, therefore, title to the shares reverted to petitioner. See 11 U.S.C. sec. 541 (2000); Brown v. O'Keefe, 300 U.S. 598, 602 (1937); Mason v. Commissioner, 646 F.2d 1309, 1310 (9th Cir. 1980), affg. 68 T.C. 163 (1977). Even assuming that petitioner initially thought such interest passed to the bankruptcy estate, petitioner was aware by the time of his discharge in November 1999 that the bankruptcy court did not administer his ownership interest in Union Machine as part of the bankruptcy estate.

Although petitioner has not been involved in the active conduct of any of Union Machine's corporate matters, including annual shareholder meetings, since September 1998, petitioner did not present any evidence, other than his own testimony, to refute the fact that he remained a shareholder of record. Indeed, Union Machine issued Schedules K-1 for the taxable years 1999 and 2000 reporting that petitioner was a 49-percent shareholder in Union

Machine.[13]

Although petitioner alleges that he abandoned or forfeited his interest in Union Machine before the year in issue, he did not affirmatively transfer his shares to another person in accordance with the Washington Business Corporation Act.  In particular, petitioner had opportunities in both 1998 and 1999 to transfer his shares to Mr. Turner for valuable consideration, but petitioner rejected those offers.  Moreover, petitioner does not claim that he was a dissenting shareholder who demanded a fair value payment for his shares.  Likewise, Mr. Turner has not sought a declaratory judgment that he is the sole shareholder, nor has he sought judicial dissolution of the corporation, and Union Machine has not redeemed petitioner's shares.

Based on the entirety of the record, petitioner failed to satisfy his burden to prove that he was not a shareholder of Union Machine for the taxable year 2000.  Accordingly, we sustain respondent's determination on this issue.

B.  Section 6662(a) Substantial Understatement of Tax

Respondent determined in the notice of deficiency that petitioner is liable for the accuracy-related penalty under section 6662(a) for a substantial understatement of income tax for the taxable year 2000.

---

[13]  The record does not indicate whether petitioner received these Schedules K-1.

Section 6662(a) imposes a penalty equal to 20-percent of any underpayment of tax that is due to a substantial understatement of income tax. See sec. 6662(a) and (b)(2). An individual substantially understates his or her income tax when the reported tax is understated by the greater of 10-percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

The accuracy-related penalty does not apply to any portion of an underpayment, however, if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for such year. Id. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer. Sec. 1.6664-4(b), Income Tax Regs.; see Higbee v. Commissioner, 116 T.C. 438, 449 (2001) (citing Remy v. Commissioner, T.C. Memo. 1997-72).

Section 7491(c) places on the Commissioner the burden of production with respect to a taxpayer's liability for any penalty. Respondent satisfied his burden of production because the record shows that petitioner substantially understated his income tax for 2000 by $7,981, which amount is greater than $5,000. See sec. 6662(d)(1)(A)(ii); Higbee v. Commissioner, supra at 442. Accordingly, petitioner bears the burden of proving that the accuracy-related penalty should not be imposed with respect to any portion of the understatement for which he acted with reasonable cause and in good faith. See sec. 6664(c)(1); Higbee v. Commissioner, supra at 446. The mere fact that we held against petitioner with respect to his status as a shareholder of Union Machine does not, in and of itself, require holding for respondent on the accuracy-related penalty. See Hitchins v. Commissioner, 103 T.C. 711, 719 (1994).

Petitioner by trade is a machinist with no formal training or experience in organizing or managing a business, let alone how to wind up his business affairs.[14] Since petitioner left the employment of Union Machine, he has had no further contact with Union Machine. Indeed, after petitioner left the employment of Union Machine, he stopped receiving any form of compensation and any communication from Union Machine, including upcoming annual

---

[14] Petitioner testified that "because of my own lack of knowledge in these things, I wasn't aware of what actions I was supposed to take."

meetings wherein he was consistently reelected to serve on the board of directors until the next annual meeting.

In light of petitioner's lack of business acumen and the circumstances of this case, we find that petitioner had reasonable cause to believe that he did not have an interest in Union Machine in 2000 and acted in good faith with respect to the underpayment.

Accordingly, we hold that petitioner is not liable for the accuracy-related penalty under section 6662(a).

C.  Conclusion

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

> Decision will be entered for respondent with respect to the deficiency and for petitioner with respect to the penalty under section 6662(a).